THIBODEAUX, Chief Judge,
dissenting.
hi disagree with the majority’s opinion. I would affirm the grant of partial summary judgment giving immunity to Cabrini for summarily suspending Granger, for striking Granger’s claims of defamation and fraud, and would reverse the failure of the trial court to grant immunity to Cabrini for its actions after Granger’s summary suspension.
Immunity to Cabrini for its pre and post-summary suspension actions is based on the Health Care Quality Improvement Act (HCQIA). Cabrini took no adverse professional action against Granger. Further, it was not Cabrini’s action that caused Granger’s damages, if any.[1]
Based on Dr. Finley’s presentations, Cabrini summarily suspended Granger’s privileges on December 19, 2002. The investigation of Granger’s actions ensued. Three weeks after the suspension, the investigating committee interviewed Granger. The questions focused on the clinical issues, and no indication that the committee was investigating Granger’s behavior was given.
| ¡.When the Medical Executive Committee (MEC) met on January 9, 2008, the minutes reflect that Granger’s behavior was also a focus of the investigation. Granger received a letter from Cabrini informing him that the summary suspension was appropriate and that his clinical privileges were fully restored. The letter did not indicate that Cabrini was investigating Granger’s behavior.
Granger requested a hearing on the propriety of the summary suspension, or, alternatively, a removal of the statement that the summary suspension was appropriate. Cabrini refused. Granger filed a suit seeking injunctive relief, i.e., a formal hearing from Cabrini.
Cabrini’s Board directed the MEC to investigate further, focusing on Granger’s behavior. At trial, there was testimony that further investigation ensued. Nevertheless, no evidence of that investigation *646 was produced during the trial. Based on this investigation the MEC voted to recommend that Granger self-refer for anger management and counseling.
Granger was notified that the Board did not approve the MEC’s recommendation of January 9, 2003, to issue a reprimand. Instead, Granger received communications by which he was (1) requested to undergo anger management, and, if he refused to do so, the MEC would recommend a revocation of his hospital privileges; and, (2) informed that he was placed on a six-month probation.
While the letter indicated that the MEC would recommend a revocation of Gran-ger’s privileges if he failed to undergo anger management, the minutes of the MEC meeting indicate that there would be an automatic revocation of his privileges. The Executive Committee of the Board formally adopted the MEC’s recommendation that Granger’s privileges must be automatically revoked if he did not undergo anger management. The recommendation regarding | (¡automatic revocation was never communicated to Granger. Thus, as far as Granger was concerned, his privileges were completely restored as of January 9, 2008.
Granger refused to undergo anger management because he has already undergone two psychological examinations (one in connection with a custody dispute over his daughter and one at the request of his former business partners). Neither examination revealed any psychological problems.
The United States Congress enacted HCQIA that provides for a peer review process of physicians’ actions to reduce medical malpractice, to improve the quality of medical care, and to prevent incompetent physicians’ movements from state to state without disclosure of previous incompetent performance. 42 U.S.C. § 11101.
As aptly observed by the majority, HCQIA was designed to promote “frank exchange of information among professionals conducting peer review inquiries without the fear of reprisals in civil lawsuits.” Bryan v. James E. Holmes Reg’l Med. Ctr., 33 F.3d 1318, 1322 (11th Cir.1994), cert. denied, 514 U.S. 1019, 115 S.Ct. 1363, 131 L.Ed.2d 220 (1995) (footnote omitted). Under HCQIA, professional review bodies’ actions regarding peer review must be made:
(1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after a reasonable effort to obtain the facts of the matter,
(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the Upresumption is rebutted by a preponderance of the evidence.
42 U.S.C. § 11112(a). If the professional review action meets the above requirements, the review body and all the persons involved in the process “shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action.” 42 U.S.C. § 11111(a)(1).

Summary Suspension

HCQIA states that in cases where there is an imminent danger to the health of any *647 patient, the notice and hearing requirements of the statute do not preclude “an immediate suspension or restriction of clinical privileges, subject to subsequent notice and hearing or other adequate procedures.” 42 U.S.C. § 11112(c)(2).
Here, Granger wanted to perform a bypass surgery on a patient who had a life-threatening hematoma the day before. The patient lost a lot of blood as a result of the hematoma and its evacuation. The anesthesiologist thought that the patient was not in a condition to undergo another surgery while Granger insisted on operating. Based on these circumstances, it is reasonable to conclude that the patient’s health may have been in imminent danger. Thus, the requirements of notice and hearing need not have been fulfilled prior to the suspension. Therefore, the trial court committed no error by granting a summary judgment in favor of Cabrini regarding its summary suspension of Granger. Furthermore, Granger had a hearing on January 8, 2003, after which Granger’s privileges were completely restored. Thus, Cabrini’s obligations of notice and hearing subsequent to summary suspension were fulfilled.
| Actions After the Summary Suspension
Under HCQIA, adequate notice and procedure requirements need not be fulfilled if “there is no adverse professional review action taken.” 42 U.S.C. 11112(c)(1)(A).
The term “professional review action” means an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.
42 U.S.C. § 11151(9). Furthermore, the other requirements of 42 U.S.C. 11112(a) that refer to the manner in which the professional action should be taken, i.e., in reasonable belief that the action was in the furtherance of quality health care, after a reasonable effort to obtain facts, and in reasonable belief that the action was warranted, presuppose that there was some adverse professional review action taken. If there was no adverse professional action, these requirements are meaningless.
Here, Cabrini took no adverse professional action against Granger, and, therefore, the trial court committed error when it denied a summary judgment in Cabrini’s favor. Moreover, even if there was an adverse professional action, the trial court committed a manifest error by finding that Cabrini caused Granger’s damages.
A little over two weeks after Granger’s summary suspension, Granger’s hospital privileges were fully restored. Although Granger received a letter requesting his participation in an anger management program, his clinical | ^privileges, as far as Granger knew, were not adversely affected. That the minutes contain language regarding automatic revocation of the privileges if Granger failed to refer to anger management is of little consequence. Whether this was an ineptly-drafted language or, indeed, what the review body resolved, is difficult and unnecessary to ascertain. It is so because Granger was informed only that his privileges were restored and that he needed to undergo anger management. Based on this information, Granger voluntarily did not utilize *648 the hospital and voluntarily abandoned his hospital privileges. Furthermore, he voluntarily decided not to renew his privileges once they lapsed at the end of July, 2008. Yet, he came to the court insisting he suffered damages resulting from a constraint on his privileges.
It is difficult for me to ascertain how Granger can obtain damages for a self-imposed restriction on his clinical privileges at Cabrini. Had he, in fact, received a notice that his privileges were revoked, or if, for example, he attempted but was prevented from performing his duties at Cabrini (which would indicate that the minutes, in fact, reflected the body’s decision of automatic revocation), my conclusion would be different.
Based on the above, the trial court and the majority err by failing to recognize that no adverse action regarding Granger’s hospital privileges was taken and by finding that he suffered damages as a result of Cabrini’s actions. That the jury found malice and that the action was not in the furtherance of quality health care are irrelevant because no action was taken to begin with. Furthermore, any damages Granger incurred resulted from his self-imposed abdication of clinical privileges, not from Cabrini’s restriction of them.
Based on these considerations, Granger failed to rebut the statutory presumptions. Thus, Cabrini should not be liable for any of Granger’s alleged causes of action that arise out of the peer review process.
| -¡Defamation, Fraud, and LUTPA Claims
To foreclose a jury’s decision on an issue after the close of evidence, a directed verdict is the proper procedural device. Frazier v. Zapata Protein USA, Inc., 02-605 (La.App. 3 Cir. 12/11/02), 832 So.2d 1141, writs denied, 03-145, 03-126 (La.3/21/03), 840 So.2d 537, 539. A directed verdict should only be granted when, viewed in light most favorable to the nonmovant, the facts and inferences point so strongly in favor of the movant that no reasonable person would reach a different conclusion. Id. “A motion for a directed verdict shall state the specific grounds therefor.” La.Civ.Code art. 1810 (emphasis added). Finally, a trial court may not grant a directed verdict on its own motion but must do so on the motion of one of the litigants. Ross v. Baton Rouge Marine Inst., Inc., 96-2720 (La.App. 1 Cir. 2/20/98), 709 So.2d 829 (citing Bourgeois v. McDonald, 622 So.2d 684 (La.App. 4 Cir.), writ denied, 629 So.2d 1177 (La.1993); Scholegel v. Robinson, 416 So.2d 366 (La.App. 4 Cir. 1982)).
After the close of the evidence, the trial court, without any motion from Cabrini, struck Granger’s defamation and fraud actions. Thereby, the trial court disallowed the jury instruction on these claims. Based on the above considerations, it was an error for the trial court to do so. Nevertheless, my conclusion that Cabrini has immunity with respect to its peer review process precludes my consideration of the defamation and fraud claims as they arise from that process. Similarly, it precludes consideration of whether Granger had standing under LUTPA and whether Granger had a breach of contract claim. These are also alternative theories of liability, and Cabrini is not “liable in damages under any law of the United States or of any State.... ” 42 U.S.C. § 11111(a)(1). Finally, because the trial court erred by not granting a summary judgment in Cabrini’s favor regarding Cabrini’s actions after the summary suspension, I need not ^consider whether the trial court erroneously allowed expert testimony of Dr. Lawrence Huntoon and whether the jury’s damage award was clearly erroneous.
*649 For the foregoing reasons, I respectfully dissent.

. Because of my conclusion regarding Cabrini’s immunity, I need not consider the following issues: (1) whether the trial court erred by allowing expert testimony of Dr. Lawrence Huntoon; (2) whether the trial court erred by holding that Granger had standing under Louisiana Unfair Trade Practices Act (LUT-PA); (3) whether the trial court erred by holding that Granger had a breach of contract claim; (4) whether the jury’s award of $3.9 million in damages was clearly erroneous; and, (5) whether Granger proved his defamation and fraud claims.